UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT A. GERMANA, )<br>      Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>HARTFORD LIFE AND ACCIDENT )<br>INSURANCE COMPANY, )<br>      Defendant. ) | Civil No. 3:23-cv-30065-MGM |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
TO TAKE LIMITED DISCOVERY AND TO ADD DOCUMENTS TO
RECORD ON REVIEW IN THIS ERISA LONG-TERM DISABILITY LITIGATION
(Dkt. No. 34)

ROBERTSON, U.S.M.J.

      Scott A. Germana ("Plaintiff") is suing Hartford Life and Accident Insurance Company ("Defendant" or "Hartford") to recover long-term disability benefits. By the present motion, Plaintiff seeks a 60-minute Rule 30(b)(6) deposition of Defendant, along with certain written discovery, primarily directed at Defendant's policy of not considering any documents submitted after it says the record is closed and its practice of relying on the opinions of physicians not licensed to practice medicine in Massachusetts regarding the work capabilities of Massachusetts residents (Dkt. No. 34). He contends that the discovery will show procedural irregularities and bias that will support reversing Defendant's denial of benefits. Defendant opposes Plaintiff's discovery motion (Dkt. No. 39). For the reasons stated herein, the court DENIES Plaintiff's discovery motion.

I.   **FACTUAL BACKGROUND**

   A. <u>Plaintiff's Allegations</u>

Plaintiff's former employer, Trinity Health Corporation, provided long-term disability ("LTD") benefits under an LTD plan insured by Hartford, which defined "disabled" as:

> You are prevented from performing one of more of the Essential Duties of:
>
> 1. Your Occupation during the Elimination Period;
> 2. Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3. after that, Any Occupation.
>
> "Any Occupation" means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
>
> 1) the product of Your Indexed Pre-disability Earnings and the Initial Benefit Period Percentage; or
> 2) the Maximum Monthly Benefit.

Plaintiff left his work as a registered nurse on April 25, 2018. Defendant paid Plaintiff LTD benefits following the expiration of the elimination period from October 23, 2018, through January 21, 2021. According to Plaintiff, despite the fact that his health had not improved, that he had chronic pain necessitating the use of prescription opiates, and that the Social Security Administration had determined he was disabled, Defendant terminated his LTD benefits based on biased opinions of file-reviewing physicians who are not licensed to practice medicine in the Commonwealth of Massachusetts.

Less than a year after Defendant closed the claim record, Plaintiff submitted a report from Walter Panis, M.D., an independent medical examiner who is board-certified in neurology and psychiatry and who reviewed Plaintiff's medical records and examined him via a video

2

conferencing platform on February 24, 2023, opining that Plaintiff is permanently disabled due to chronic pain. Plaintiff attributes his delayed filing of the report to the symptoms of his disability. According to Plaintiff, despite his tardy submission, Defendant had sufficient time to analyze the report before he filed suit and was not prejudiced by the delay in receiving it. Nevertheless, Defendant refused to consider the report pursuant to its internal policy of not considering any new evidence following an initial determination notwithstanding its status as a fiduciary.

Plaintiff characterizes his current contentions as going to Defendant's unfair procedures rather than the substance of its decision, which he says justifies allowing him to conduct the limited discovery he seeks, including: (1) a 30(b)(6) deposition of no more than 60 minutes regarding Defendants' policy of not considering any new documents submitted after the record is closed and Defendant's practice of relying on physicians not licensed in the Commonwealth of Massachusetts to opine on the work capabilities of Massachusetts residents; (2) eight document requests for Defendant's claims guidelines regarding its policy of refusing to consider new documents after it decides the record is closed; for selecting file reviewing physicians; for selecting file reviewing physicians for ERISA participants who reside in Massachusetts; its consideration of Social Security Administration ("SSA") awards; whether it seeks to select unbiased physician reviewers; its steps to insulate the decision-making process against structural conflicts; and its process for determining that Plaintiff could work in occupations that it identified in making its adverse-benefit determination; as well as 50 reports for the years 2021-2022 of each file-reviewing physician who opined about Plaintiff; and (3) three interrogatories identifying the number of medical reviews conducted by the file-reviewing physicians who opined about Plaintiff on behalf of Hartford for the years 2021, 2022, and 2023, the number of

those medical reviews for which the physicians in question found the claimant not to be impaired from working any job, and the number of those medical reviews for which the physicians in question found the claimant to be impaired from working any job.

B. <u>Defendant's Response</u>

According to Defendant, shortly after Plaintiff stopped working on April 25, 2018, he was diagnosed by Marc Goldman, M.D., with epiploic appendigitis, lower quad abdominal pain, and diverticulitis. Almost a year after he left work, on March 19, 2019, Plaintiff completed his application for LTD benefits. As of June 3, 2019, Dr. Bernaiche, D.O., one of Plaintiff's treating providers, opined that Plaintiff could sit and stand for less than one hour at a time for up to a total of three hours per day and could walk less than one hour at a time for up to a total of two hours per day. Dr. Bernaiche offered these opinions despite a lack of significant findings on an MRI. Thereafter, Frank Polanco, M.D., who is board certified in occupational medicine and who was selected by Defendant's third-party vendor to review Plaintiff's medical records to date, found that the records supported restrictions and limitations consistent with sedentary work capacity. When Hartford sent Dr. Polanco's review to Plaintiff's providers for comment, Dr. Goldman responded saying that Plaintiff had no disabling issues from a GI standpoint, while Dr. Bernaiche maintained that Plaintiff was still limited to sitting for one hour at a time for a total of four hours per day and could only occasionally lift and carry up to 25 pounds. Given the applicability of the "own occupation" disability standard and the fact that Plaintiff's occupation as a nurse required medium work capacity, Defendant approved benefits.

In anticipation of the change in the policy's definition of disability from "own occupation" to "any occupation," Defendant obtained a labor market survey which identified a number of sedentary and light nursing occupations existing in the national economy and meeting

Plaintiff's wage replacement requirement. In addition, Defendant requested an updated physician's statement and treatment records from Plaintiff's healthcare providers. Only Dr. Joseph responded, stating that, as of October 13, 2020, Plaintiff was being followed by a pain doctor who should complete a statement regarding Plaintiff's restrictions and limitations. A little over a month later, however, Dr. Joseph opined – without identifying any objective findings for support – that Plaintiff could never bend, kneel, climb, balance, drive, lift, reach, or perform fine and gross manipulation. Dr. Joseph did not include any sitting, standing, or walking limitations in his November 2020, assessment. Thereafter, Defendant, again through a third-party vendor, obtained a January 21, 2021, peer review of Plaintiff's medical records by Aaron Morgenstein, M.D., who is board certified in orthopedic surgery. As part of his review, Dr. Morgenstein spoke with Dr. Joseph, who indicated that Plaintiff had an intermittent antalgic gait and reported difficulty with prolonged walking, standing, and sitting, but had no weakness or strength issues, was able to take care of himself and do his own grocery shopping, and did not use any assistive devices. Based on his review of Plaintiff's medical records and discussion with Dr. Joseph, Dr. Morgenstein concluded that Plaintiff's restrictions and limitations were consistent with sedentary work capacity. At that point, Hartford obtained a second vocational analysis identifying several sedentary occupations within Plaintiff's functional capacities, skill, education, and earnings requirements, which the earlier labor market survey showed existed in the national economy. A senior analyst for Defendant sent Dr. Morgenstein's peer review to Dr. Joseph with a request for comments by January 29, 2021, but none were forthcoming. Defendant's senior analyst also advised Plaintiff of his right to appeal the determination within 180 days, with the possibility to toll the time to appeal based on the COVID national emergency.

On July 12, 2021, Plaintiff's counsel submitted a representation letter and notice of appeal on Plaintiff's behalf. On March 4, 2022, after Defendant granted multiple requests for additional time to submit appeal materials, Plaintiff's counsel submitted Plaintiff's appeal with supporting documentation. According to Defendant, the appeal did not include any physical examinations documenting abnormalities that might support functional impairment or any functional testing reflecting such impairments. Plaintiff's appeal faulted Defendant for not obtaining an independent medical exam and for relying on physicians not licensed in Massachusetts. In addition, the appeal pointed to Plaintiff's award of social security disability income as proof of disability but did not provide the underlying decision. In response, an appeal specialist for Defendant obtained two additional peer reviews, one by a board-certified gastroenterologist (Sabeen Medvedev, M.D.) and the other by a board certified physiatrist (Neil Patel, PM&R), both of whom found no support for functional impairment in Plaintiff's records. Defendant's appeal specialist provided the peer reviews to Plaintiff's counsel on March 24, 2022, with Plaintiff's response due, following a number of extensions, by June 6, 2022. When she did not receive any additional information from Plaintiff's counsel by the deadline, Defendant's appeal specialist reached out to him to determine if he intended to provide additional information. Plaintiff's counsel did not respond, and, on June 16, 2022, Defendant's appeal specialist upheld the termination of Plaintiff's benefits effective January 22, 2021. In doing so, she explained that the evidence supported the denial of further benefits and responded to each of Plaintiff's appeal arguments in writing.

Approximately nine months later, on March 13, 2023, Plaintiff's counsel submitted the report from Dr. Panis described above, opining that Plaintiff is permanently disabled due to chronic pain. Defendant maintains that the report consists of conclusory opinions regarding

Plaintiff's lack of functionality not based on any testing and that it fails to identify any medical bases for support. While Plaintiff's counsel asserted that Defendant was required to consider the report because of the COVID National Emergency, Defendant's appeal specialist declined to do so and confirmed that "there are no provisions for additional appeals or re-opening the administrative record after a final appeal decision."

## II.     DISCUSSION

In an ERISA benefit denial case, the district court sits in a role more akin to an appellate tribunal than a trial court. *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002). Rather than taking evidence, it evaluates the reasonableness of the administrative decision based on the record compiled before the plan administrator. *Id*. "[B]ecause the Court's review [is] limited to adjudicating the reasonableness of the administrator's decision to deny benefits, 'some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator.'" *Nicholas v. Cigna Life Ins. Co. of New York,* No. Civ. No. 14-cv-14117-ADB, 2016 WL 755612, at *2 (D. Mass. Feb. 25, 2016) (quoting *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003)). "This is true as to discovery as well, regardless of whether the standard of review is de novo or deferential." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005).

The First Circuit has recognized two scenarios under which narrowly tailored discovery may be permissible in an ERISA benefit-denial case. First, "a good reason has been found to exist when a party makes a colorable claim of bias." In such situations, "[t]argeted discovery … may shed new light on the motivation behind the plan administrator's decision without expanding the panoply of materials on which that decision was based." *Denmark v. Liberty Life Assur. Co. of Boston*, 566 F.3d 1, 10 (1st Cir. 2009) (citing *Liston*, 330 F.3d at 23). Second,

where a plan administrator is responsible for evaluating *and* paying benefit claims, some discovery may be appropriate "on the issue of whether a structural conflict has morphed into an actual conflict." *Id*. (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)). As to the latter, "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts," such that a structural conflict of interest not addressed in the administrative record can be considered a "very good reason" for discovery outside the administrative record. *Denmark*, 566 F.3d at 9, 10 (quoting *Liston*, 330 F.3d at 23). "But any such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." *Id*. at 10.

Because Hartford determines whether claims for LTD benefits satisfy the terms of the LTD plan and is liable for payments thereunder, a structural conflict of interest exists. In such circumstances, to be entitled to supplemental discovery on the issue of whether a structural conflict has morphed into an actual conflict, a plaintiff must "make[ ] a threshold showing that the denial of benefits was improperly influenced by the administrator's conflict of interest." *Bonomo v. Factory Mut. Ins. Co.*, No. 1:21-cv-11750-IT, 2023 WL 3934696, at *7 (D. Mass. June 9, 2023) (quoting *McGahey v. Harvard Univ. Flexible Benefits Plan*, Civil Action No. 08-10435-RGS, 2009 WL 799464, at *2 (D. Mass. Mar. 25, 2009)). Bare allegations of structural conflict are insufficient. *Bonomo*, 2023 WL 3934696, at *7 (denying comparator discovery where the plaintiff's claims of bias did not "go beyond mere allegations to make out a 'threshold showing' that the denial of benefits was improperly influenced by the conflict of interest or record of bias"); *Semedo v. Boston Bldg. Serv. Emps. Tr. Fund Long Term Disability Plan*, Civil Action No. 12-11697-RWZ, 2013 WL 3805130, at *3 (D. Mass. July 19, 2013) (denying

discovery relating to the defendant's relationships with its paid consultants and reviewers where the plaintiff made only a general allegation that the insurer could not make an independent or fair decision because of its pecuniary interest in the final determination); *McGahey*, 2009 WL 799464, at *2-3 (denying discovery of the defendant's historical record of disability claims decisions, its policy of demanding reimbursement of social security benefits while denying continued benefits, and its procedures to ensure that a presumptive conflict does not taint the decision-making process because the plaintiff's argument that additional proof was needed to determine a conflict of interest "assume[d] its own conclusion"). With these principles in mind, the court addresses Plaintiff's arguments for discovery.

      A.     <u>Defendant's Adverse Determination Does Not Reveal "Implicit Bias"</u>

Plaintiff's first argument appears to be that the fact that Defendant terminated his disability benefits based on the opinions of non-examining physicians where his health had not improved and where he suffers from chronic pain for which he uses opiates reveals that Defendant was implicitly biased against him. Defendant initiated a review of Plaintiff's claim when the policy definition of disability changed. The timing of the review appears objectively reasonable, and the arguments about whether Defendant reasonably relied on the opinions of physicians who did not examine Plaintiff and whether there was substantial evidence that Plaintiff's chronic pain condition and use of opiates resulted in functional restrictions and limitations meeting the changing definition of disability under the LTD plan are merits arguments. The bald fact that Defendant made an adverse benefits determination is not evidence of bias or unfair claims processing. *See Kamerer v. Unum Life Ins. Co. of Am.*, 251 F. Supp. 3d 349, 352-53 (D. Mass. 2017) (rejecting the plaintiff's argument that the insurance carrier's looking for reasons to terminate her benefits was evidence of bias or unfair claims processing).

If it were, almost every plaintiff in an ERISA benefit denial case would be entitled to discovery, and the First Circuit has made clear that discovery is the exception, not the rule. *Liston*, 330 F.3d at 23.

> B. Defendant's Policy of Refusing to Consider Materials Once It Has Closed the Claims Record Does Not Prevent Full and Fair Review Under ERISA

Perhaps Plaintiff's most vehemently asserted argument for discovery is that Defendant's policy of refusing to consider materials after it has closed the claims record – in this case, the report from Dr. Panis – prevents full and fair review under ERISA. For support, Plaintiff relies on *Feltington v. Hartford Life Ins. Co.*, 586 F. Supp. 3d 146 (E.D.N.Y. 2022). In the *Feltington* case, Defendant was required to produce an internal policy applicable only to ERISA claimants directing its decisionmakers to deny any request for reconsideration after a final appeal decision was issued, even if new information was submitted with the request. *Id*. at 156-57. In the *Feltington* court's view, the policy raised some troubling questions, including whether Defendant was failing to meet its obligation to provide full and fair review, was violating disclosure duties to claimants by keeping the policy secret, and was treating ERISA claimants less favorably than non-ERISA claimants. *Id*. at 157-58. Of particular concern to the *Feltington* court was a hypothetical situation in which Defendant received "unimpeachable information that it had rendered a decision about the *wrong claimant*," but Defendant's policy would still require the decisionmaker to "stand by their decision." *Id*. at 157.

Plaintiff's reliance on *Feltington* is inapposite because this court is bound by the holdings of the First Circuit, which conflict with *Feltington*. In the First Circuit, "the final administrative decision acts as a temporal cut off point." *Orndorf*, 404 F.3d at 519. This means that evidence collected after the final administrative decision, even if the new evidence directly concerns the question of disability before the decision, as well as evidence regarding the claimant's condition

10

after the final administrative decision, are inadmissible.  *Id*. at 520.  This exclusionary rule encompasses the Panis report insofar as Dr. Panis did not examine Plaintiff until February 24, 2023, over eight months after Defendant issued its final appeal decision on June 16, 2022.  In announcing the rule in *Orndorf*, the First Circuit explained that "[i]t would offend interests in finality and exhaustion of administrative procedures required by ERISA to shift the focus from [the final administrative decision] to a moving target by presenting extra-administrative record evidence going to the substance of that decision."  *Id*. at 519 (citing *Liston*, 330 F.3d at 24).  Given that this is the rule in the First Circuit, this court cannot accept the proposition that Defendant's internal policy that aligns with the rule precludes full and fair review or supports a colorable claim of bias sufficient to justify discovery outside the administrative record.

      Moreover, this case does not pose the hypothetical risk imagined by the *Feltington* court.  Plaintiff has not presented evidence that Defendant confused the identities of claimants, nor is this a case where circumstances obviously beyond Plaintiff's control prevented a timely supplementation of the record.  The *Feltington* court is correct that mistakes can be made.  However, if Defendant had made an identity or other fundamental mistake, Plaintiff had ample time to point it out during Defendant's initial "any occupation" review or during the pendency of the appeal when Defendant's appeal specialist provided Plaintiff with several months to review and respond to the peer reviews.  While Plaintiff relies on his disability as the reason he failed to respond by the deadline and did not submit supplemental information until nine months after Defendant's uphold decision, Plaintiff was represented by counsel who could have notified Defendant that Plaintiff needed more time to respond.

      C.      <u>Defendant Offered a Plausible Explanation for Disregarding the SSA Determination of Disability</u>

11

Plaintiff's next argument, that Defendant never offered a plausible explanation for "disregarding" the SSA determination that Plaintiff was disabled, is not supported by the record. In Defendant's June 16, 2022, uphold letter, Defendant acknowledged that Plaintiff had been approved for SSDI, but explained that different standards govern the receipt of SSDI and LTD benefits, such that the SSA's disability determination was relevant, but not controlling (Dkt. No. 45-4 at 4-10).  Defendant went on to describe those differences in the standard of review in some detail.  This does not equate to disregarding the SSA disability determination.  Further, Defendant was limited in its ability to specify how it reached a contrary disability determination that was specific to Plaintiff's medical evidence, but this was because Plaintiff did not provide a copy of the SSA decision despite Defendant's direction to Plaintiff to provide information relating to his Social Security award if he wanted Defendant to consider it as part of his appeal (Dkt. No. 45-3 at 40).  Where Plaintiff, who is represented by eminently competent and experienced ERISA counsel, did not provide Defendant a copy of the SSA decision or relevant materials he submitted to the SSA to support his appeal and did not attempt to show, during the appeals process, how the SSA decision was relevant as evidence of error in Defendant's denial of LTD benefits, he cannot reasonably argue that Defendant's treatment of the SSA decision was procedurally irregular or is somehow evidence of bias that justifies discovery outside of the existing administrative record.

      D.    <u>Defendant's Purported Assistance in the Unlicensed Practice of Medicine in Massachusetts Does Not Justify Discovery Outside the Administrative Record</u>

Plaintiff argues that Defendant engaged in conduct unbecoming of a fiduciary when it assisted Drs. Medvedev and Patel in the unlicensed practice of medicine in the Commonwealth, where neither physician is licensed.  Plaintiff relies on 243 C.M.R. § 2.01(4), which defines "[t]he Practice of Medicine" as conduct "the purpose or reasonably foreseeable effect of which is

12

to encourage the reliance of another person upon an individual's knowledge or skill in the maintenance of human health by the prevention, alleviation, or cure of disease, and involving or reasonably thought to involve an assumption of responsibility for the other person's physical or mental well-being," including "[p]roviding an independent medical examination or disability evaluation." Plaintiff does not cite any case law supporting the proposition that Drs. Medvedev and Patel broke Massachusetts law by reviewing Plaintiff's medical records and opining on his functional capabilities as part of Defendant's review of his appeal. In view of the introductory passage of the definition of the practice to medicine, the court is not convinced that Drs. Medvedev and Patel engaged in the unlicensed practice of medicine by reviewing Plaintiff's medical records in connection with providing a disability evaluation.

In any event, pursuant to 29 C.F.R. § 2560.503-1 (h)(3)(iii) and (m)(7), group health plans are required to consult with physicians or other health care professionals licensed, accredited, or certified to perform specified health services consistent with State law and with appropriate training and expertise in the field of medicine involved. The federal regulations do not require that the professional be licensed in the State in which the claimant resides. Plaintiff fails to explain how Defendant's reliance on Drs. Medvedev and Patel, who were selected by an outside vendor and on whom ERISA regulations allow Defendant to rely, demonstrates Defendant's bias against Plaintiff or that Defendant's benefits denial was improperly influenced by Defendant's structural conflict of interest. Finally, Plaintiff does not need discovery to argue that Defendant's decision to deny benefits based on opinions offered by physicians who were not licensed in Massachusetts was unreasonable.

   E. <u>Defendant's Purported Failure to Consider Plaintiff's Cognitive Limitations from Taking Opiate Pain Medications and Chronic Pain is a Merits Argument</u>

Plaintiff argues that Defendant failed to consider his cognitive limitations resulting from his chronic pain condition and the opiate pain medications he takes to alleviate it in determining that Plaintiff could work in occupations for which he has had no history or training. Defendant counters that Plaintiff's medical records did not document any opiate pain medication prescriptions or functional impacts from such medications. This is a merits argument. The reasonableness and substantial support or lack thereof of Defendant's consideration of Plaintiff's chronic pain condition and use of opiate medications should be evaluated based on the administrative record. The argument does not demonstrate bias against Plaintiff or that Defendant's denial was improperly influenced by the structural conflict of interest sufficient to justify discovery.

F.  Defendant's Refusal to Consider the Delinquent Panis Report Did Not Violate ERISA Claims Regulations Requiring "Full and Fair Review"

Plaintiff cites to 29 C.F.R. § 2560.503-1(h)(2) to argue that Defendant's refusal to consider the Panis report violated the three fundamental rights that constitute "full and fair review" under ERISA. The regulations require plans to: "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;" "[p]rovide that a claimant shall be provided … reasonable access to, and copies of, all documents, records, or other information relevant to the claimant's claim for benefits;" and "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(ii)-(iv). Defendant's refusal to consider the Panis report, which Plaintiff submitted nine months after the final appeal decision, does not violate full and fair review. *See Warming v. Hartford Life & Acc. Ins. Co.*, 663 F. Supp. 2d 10, 20 (D. Me. 2009) (finding no

14

violation of full and fair review where the claimant did not seek to submit the results of neuropsychological testing until over a year after the defendant issued an appeal decision that it made clear it considered final).

      G.      <u>Plaintiff's Failure to Raise a Colorable Claim of Bias or that Defendant's Denial Was Improperly Influenced by the Structural Conflict of Interest Precludes Discovery of Statistics About the Physicians Who Reviewed his File</u>

Part of the discovery Plaintiff seeks is data spanning three years regarding the physicians who opined on Plaintiff's claim for Defendant, including the number of reviews each physician performed, the outcome of those reviews, and the production of 50 reports from each physician. For support, Plaintiff relies primarily on *McGahey v. Harvard Univ. Flexible Benefits Plan*, 260 F.R.D. 10 (D. Mass. 2009). In *McGahey*, the court had previously denied discovery outside the administrative record but left open the possibility for reconsideration if the plaintiff could make a showing of a conflict of interest in the defendant's decision-making process at the summary judgment stage. *Id*. at 11. At the summary judgment stage, the court found that the plaintiff had made such a showing because the three experts on whom the defendant relied "[stood] apart from the other fourteen experts and treating physicians who opined on McGahey's disability …." *Id*. at 12. The court found that the opinions of these three physicians that the plaintiff was "faking" were "difficult to reconcile with the diagnoses of [the plaintiff's] treating physicians who [were] sufficiently convinced of her complaints of pain to prescribe powerful (and potentially addictive) painkillers like Oxycontin and Percocet." *Id.* The court ordered the defendant to produce the total number of independent medical exam reports it had commissioned from these three doctors over a three-year period, as well as the raw number of claims that each of these doctors recommended be denied and allowed. *Id.* Plaintiff has not made any such

15

showing on this record. The existence of a structural conflict, standing alone, is insufficient to establish a very good reason justifying this discovery as well.

### III. CONCLUSION

For the above-stated reasons, Plaintiff's Motion to Take Limited Discovery and to Add Documents to Record on Review in this ERISA Long-Term Disability Litigation (Dkt. No. 34) is DENIED.

It is so ordered.

Dated: July 15, 2024                              /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  United States Magistrate Judge